[Cite as *Condon v. Rockich*, 2018-Ohio-71.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| HEATHER CONDON | | C.A. No. 28479 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RYAN ROCKICH | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. DR-2005-08-2704 |

DECISION AND JOURNAL ENTRY

Dated: January 10, 2018

---

CARR, Judge.

{¶1} Appellee Heather Condon ("Mother") appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, and reverses in part.

I.

{¶2} Mother and Appellee Ryan Rockich ("Father") were married in 1996 and three children were born of the marriage: S.R. (d.o.b. 5-10-00), H.R. (d.o.b. 7-31-01), and E.R. (d.o.b. 5-29-03). The parties divorced in 2006 and a shared parenting plan was made a part of the decree. It provided that Mother was the residential parent of the children at all times, provided parenting time for Father, and ordered Father to pay child support. In 2006, Mother filed notices of intent to relocate the children to New Jersey. Father did not file objections to the notices. Mother relocated to New Jersey with the children, completed nursing school, and subsequently remarried. Mother's husband has a son from a prior relationship whom he has custody of and is

close in age to E.R. In 2010, Mother and Mother's husband also had a child together. During the course of the litigation, Father also remarried.

{¶3} Mother and Mother's husband began experiencing marital problems and on several occasions separated, sometimes only briefly. Father maintained that Mother separated at least five times from her husband and brought the children back to Ohio on at least three occasions; however, Mother denied that assertion. Mother did acknowledge that in August 2011 she separated from her husband for 18 months. At that point, Mother asked Father to care for the children for the school year. Father enrolled the children in Barberton schools. Mother and Father entered into an agreed entry on March 27, 2012 reflecting that the three children would reside with Father for the 2011-2012 school year. On August 2, 2012, Mother and Father entered into another agreed entry providing that the three children would reside with Father for the 2012-2013 school year and that Father would be relieved of paying child support for that time period. In part, Mother blamed her instability and marital discord on having Graves Disease, which is an autoimmune condition that causes overproduction of a thyroid hormone, which can cause mood swings and irritability. Mother was able to control the condition through medication.

{¶4} On December 3, 2012, Father filed a motion seeking the reallocation of parental rights and responsibilities, modification of parenting time, and modification of child support. A magistrate issued a provisional order on February 21, 2013. Therein, the magistrate found that the parties' agreed entry from August 2, 2012, "in essence, designated [Father] as the residential parent of the children[.]" The magistrate ordered that the shared parenting plan would "remain in effect, except as modified" below. The magistrate designated Father as "the temporary residential parent" and the "temporary residential parent * * * for school purposes[.]" Mother

was to have parenting time one weekend a month in Ohio and the standard parenting time schedule applied to holidays, days of special meaning, and summer vacation.

{¶5} Beginning in 2014, the matter proceeded to trial. However, the litigation was contentious and prolonged. At one point, Mother was limited to supervised visitation. A guardian ad litem ("GAL") was appointed, and the children also received counsel when it was discovered their wishes conflicted with the recommendation of the GAL. Moreover, two custody evaluations were conducted. Multiple hearings and trial dates were held, the last of which was not held until February 5, 2016. Numerous motions were filed in the interim, including motions seeking to hold Mother in contempt for violations of various orders. Ultimately, the GAL and both custody evaluators that testified at trial recommended that the children remain in Father's care.

{¶6} In May 2016, the magistrate issued a decision, which the trial court adopted the same day. The magistrate found that it was in the children's best interests to terminate the shared parenting plan and name Father the sole legal custodian and residential parent. Mother was ordered to engage in counseling and Mother and children were to engage in family counseling. Mother was to continue with supervised visitation until unsupervised contact was suggested by her counselor, the family counselor, and the children's counselors. Subsequently, Mother was to have "Regular Parenting Time" as specified in the entry. For the period from December 3, 2012 through December 31, 2014, Mother was ordered to pay $1,214.50 in child support and was ordered to pay $1,346.83 in child support effective January 1, 2015. Additionally, Mother was ordered to pay $20,840 for attorney fees and extraordinary costs due to Mother's violation of the civil rules, frivolous conduct, contempt, and discovery violations.

{¶7} Mother filed timely objections to the magistrate's decision and requested transcripts of the hearings. After the transcripts were filed, Mother moved for an extension of time to file supplemental objections, which was granted. Thereafter, Mother filed supplemental objections. On January 4, 2017, the trial court issued an entry addressing the objections. The trial court concluded that shared parenting was not in the children's best interests and that Father should be named the sole residential parent and legal custodian. The trial court listed factors that it found important, including that the parties were unable to communicate in a meaningful way, the children were well adjusted to living with Father, that Father was more likely to honor court ordered visitation, and that the GAL recommended that the children reside with Father. Additionally, the trial court increased the sanctions against Mother to $25,000.

{¶8} Mother has appealed, raising five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE DECISION OF THE TRIAL COURT IN ALLOWING TAPE RECORDED CONVERSATIONS BETWEEN MOTHER, THE MINOR CHILDREN, AND MOTHER'S SPOUSE TO BE USED AS EVIDENCE AT TRIAL WAS A VIOLATION OF THE RULES OF EVIDENCE, PREJUDICIAL AND AN ERROR OF LAW[.]

{¶9} Mother argues in her first assignment of error that the trial court erred in allowing the audio tape recordings of Mother's and Mother's husband's conversations with the children to be used as evidence.

{¶10} "Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *Pflaum v. Summit Cty. Animal Control*, 9th Dist. Summit No. 28335, 2017-Ohio-4166, ¶ 11, citing *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 17. An abuse of discretion implies that the trial court's

attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "'In so doing, we consider the trial court's action with reference to the nature of the underlying matter.'" *Pflaum* at ¶ 11, quoting *Tabatabai* at ¶ 18.

{¶11} At the initial trial date in February 2014, Father's counsel asked Mother various questions related to what she discussed with the children when she spoke to them, and what she allowed her husband to discuss with the children, including court proceedings, financial and litigation costs, as well as whether she undermined or spoke negatively about Father. Largely without objection,[1] Father's counsel then played conversations purported to be between Mother (and sometimes Mother's husband) and the children that Father had recorded.

{¶12} Those recordings were also discussed at the May 21, 2015 hearing. Therein, Mother acknowledged that at the prior hearing she had admitted to: discussing the case with the children, discussing litigation costs with the children, telling H.R. to tell the magistrate certain things, allowing her husband to talk to the children about court proceedings, and undermining Father's relationship with the children. There were no objections raised to this line of questioning. Mother, without objection, made similar acknowledgements relative to the recordings at the September 28, 2015 hearing.

{¶13} Finally, at the November 18, 2015 hearing, several of the recordings were played for Dr. Richard Rynearson, a clinical psychologist who co-authored the second custody evaluation. The report based on the second custody evaluation recommended that Mother receive custody of the children. However, Dr. Rynearson admitted that he had not listened to the audio recordings provided by Father but noted that from his observations any alienation by

---

[1] Mother's counsel did object to the playing of one of the audio recordings. Mother's counsel noted that Mother had admitted to telling the children that Father has kept the children from her and thus playing the audio recording that evidenced the same was not impeachment.

Mother was not "particularly obvious." Dr. Rynearson acknowledged that if Mother admitted to undermining Father, alienating Father, and discussing the litigation with the children that would be important for him to know and to consider in rendering an evaluation. Several of the audio recordings were then played for Dr. Rynearson without objection. After hearing the recordings, Dr. Rynearson agreed that it was a mistake not to listen to them prior to issuing a recommendation. The GAL then asked, without objection, whether, after hearing the recordings, his recommendation had changed. Dr. Rynearson responded that he would have to think about it. The magistrate then asked, without objection, whether, "based upon all the audio recordings and the statements that if you perceive them to be true * * * would your recommendation you've made to the Court change[?]" Dr. Rynearson indicated it would and that he would recommend that the children continue to live with Father.

{¶14} At the final date of the hearing, during the admission of the exhibits, Mother's counsel objected to the admission of the audio recordings as an exhibit. Counsel asserted she was "maintain[ing] [her] earlier objection." Counsel noted she was not representing Mother at the time of the original objection, but from her review, she believed "the objection had to do with whether it was an authentic original production of the recording, and whether that recording had or had the potential to be manipulated." Father's counsel replied that the clips were offered for impeachment and asserted that Mother had authenticated her voice. Father's counsel also noted that all parties were provided with the entire recording. Additionally, Mother objected to the transcript of the audio recording being admitted as an exhibit. The magistrate overruled Mother's counsel's objections.

{¶15} Following the issuance of the magistrate's decision, Mother filed objections related to the audio recordings. In her supplemental objections, Mother argued not only that the

audio recordings were improperly admitted into evidence, but also objected to the use of the audio recordings at trial. Mother argued that the recordings were not admissible because the record was devoid of any foundational questions related to authentication necessitated by Evid.R. 901(A). Additionally, Mother argued that the use of the recording was impermissible hearsay and that the use of the recordings violated federal law and state law as they were obtained without consent of Mother or Mother's children.

{¶16} We conclude that Mother has not properly preserved her arguments for appeal. During trial, Mother only raised a single objection to the playing of one of the recordings, arguing that that particular clip was not being used for impeachment. No other objections to the playing of the recordings were made at the time they were played. Mother also did not object to the questioning at subsequent hearings that related to the playing of the recordings. Instead, at trial, Mother only objected to the admission of the recordings as an exhibit, and only on the basis that she was not sure the recordings were complete and had not been manipulated.

{¶17} While Mother included the arguments she raises on appeal in her supplemental objections, this Court has stated that "[t]he filing of a written objection to the decision of a magistrate is not a substitute for the obligation to object to a purported error at the time of its occurrence." *In re M.B.,* 9th Dist. Lorain Nos. 11CA010060, 11CA010062, 2012-Ohio-5428, ¶ 11. "Indeed, '[t]he contemporaneous objection rule is fundamental to our jurisprudence.'" *Id.*, quoting *Steward v. Norris Bros. Co., Inc.*, 8th Dist. Cuyahoga No. 53540, 1988 Ohio App. LEXIS 908, *1 (Mar. 17, 1988). "The rule serves the interest of justice because it allows for the correction of many defects while they are readily curable, as well as it encourages the elimination of delay and the unnecessary use of the appellate process." *In re M.B.* at ¶ 11. "In

this case, any purported error could have been very easily corrected had an objection been timely entered." *Id.*

**{¶18}** Accordingly, Mother has not preserved the vast majority of her current objections to the use of the recordings at trial. *See id.* To the extent Mother has preserved her single objection to the use of one of the recordings at trial, we conclude that any error in allowing that recording to be played was harmless in light of the use of the other clips to which there was no objection. *See* Civ.R. 61. To the extent Mother challenges the admission of the exhibit itself, we likewise conclude any error in the admission of the exhibit was harmless in light of use of the recordings at trial to which there was no objection. *See id.*

**{¶19}** Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE DECISION OF THE TRIAL COURT IN TERMINATING MOTHER'S SHARED PARENTING, FINDING MOTHER VIOLATED PRIOR ORDERS OF THE COURT, AND IMPOSING SANCTIONS AGAINST HER, WAS ALL BASED ON AN ERROR AND MISAPPLICATION OF LAW THAT FATHER WAS THE TEMPORARY SOLE CUSTODIAN.

**{¶20}** Mother argues in her second assignment of error that the trial court based some of its decisions (related to terminating the shared parenting plan, and concluding that she violated orders and imposing sanctions) on the incorrect finding that Father was the temporary sole custodian. Mother maintains that the trial court concluded that it previously terminated the parties' shared parenting plan and named Father as the sole residential parent and legal custodian.

**{¶21}** Initially, we note that Mother has not pointed this Court to a place in the magistrate's decision or the trial court's judgment entries wherein the court concluded that it previously terminated the shared parenting plan. *See* App.R. 16(A)(7). Essentially, Mother

asserts that she was punished for taking the children to medical and counseling appointments without the consent of Father. Mother admitted during the trial that during spring break 2014, she took E.R. to a pediatrician and the children to a counselor without informing Father before doing so and without seeking his consent.

{¶22} The magistrate's February 21, 2013 order stated that Father was "designated as the temporary residential parent of the minor children" and as "the temporary residential parent of the children for school purposes[.]" However, the order also provided that "[t]he parties' Shared Parenting Plan shall remain in effect, except that it is modified as follows[.]" Thus, Mother maintained that, because the shared parenting plan was not terminated, she was free to take the children to appointments without the consent of Father.

{¶23} Unfortunately, the parties' shared parenting plan is not a model of clarity when it comes to addressing medical issues concerning the parties' children. The plan does not specify who can or cannot decide that the children need to see a medical or psychological professional for non-emergency issues, nor does it state that the parents must notify each other of the children's non-emergency medical appointments. It only states that "[a]rrangements and transportation for medical/dental care shall be the responsibility of the parent with whom the children are residing." However, the plan does state that "[b]oth parents agree to communicate with one another either directly, or through a third party if necessary, frequently and in good faith about parenting issues." It also provides that "[t]he parties have undertaken to establish a Parenting Plan which provides for equitable sharing of their parental rights and responsibilities, joint decision-making, and the enjoyment of their children's lives."

{¶24} Thus, it is somewhat unclear to this Court who could decide if the children needed non-emergency medical/psychological care and whether that decision had to be approved by the

other parent. Naming Father the temporary residential parent does not provide further clarity in light of the provision that the shared parenting plan would remain in place. However, in light of the language of the shared parenting plan favoring communication about parenting issues and joint decision-making, it could be argued that Mother should have at least consulted with Father prior to taking the children to the appointments, even if she did not necessarily need his consent.

{¶25}  Nonetheless, even assuming there was an error in the lower court concluding that Mother was not free to take the children to medical and psychological appointments without Father's consent, we cannot conclude that that error created the prejudice Mother alleges or formed the primary basis for the magistrate's and trial court's decisions.

{¶26}  It is true that the magistrate did mention on more than one occasion that Mother took the children to appointments without the consent of Father. One of those instances, however, was in a section of the magistrate's findings detailing Father's testimony. With respect to the termination of the shared parenting plan, the magistrate did mention that "Mother [] exhibited throughout the litigation a lack of respect for Father's designation as temporary custodian (i.e. She without authority took children to doctors, counsellors etc.)[.]"  However, much more of the magistrate's statements and findings prior to and subsequent to related to a discussion of the testimony of the GAL and custody evaluators who ultimately recommended that the children reside with Father. The magistrate noted that the GAL found Mother's conduct to demonstrate a pattern of alienation and believed that Mother had discussed the litigation and audio recordings with the children despite court orders prohibiting the same. The magistrate also noted that one of the custody evaluators found that Mother and Mother's husband disparaged Father and his spouse and that Mother seemed not to understand her behavior was disruptive to the children's wellbeing. The magistrate further commented that the custody evaluator testified

that the children had indicated Mother had discussed the litigation with the children. The magistrate also pointed out that Mother had admitted to discussing the case with the children and to undermining Father's relationship with the children.

{¶27} In concluding that the shared parenting plan should be terminated and Father should be named the sole residential parent, the magistrate noted that Mother exhibited a propensity to be "capricious, exercise[d] poor judgment as it concern[ed] her behavior and disclosures with the children, [failed to comply] with court orders and directives, and [failed] to get compliance by herself and her spouse in their interactions with the children which would allow for them to comply with court orders and directives." The magistrate further stated that "the voluntary conduct of Mother ha[d] evolved to the point that the court can no longer consider Mother to be suitable to have custodial responsibilities for the children of any kind." While the magistrate then stated that "[t]he Court believes this to be so as Mother has exhibited throughout the litigation a lack of respect for Father's designation as temporary custodian (ie. She without authority took children to doctors, counsellors etc.)[,]" the magistrate continued stating, "it is fair to say mother has failed to abide by Court orders and directives; and *most importantly* the Court finds particularly from the testimony of the trained professionals that Mother fail[ed] to appreciate the stress and adverse effects that her inappropriate conduct and decisions she has made has had upon the children." (Emphasis added.) Finally, the magistrate observed that the parties did not have the ability to communicate to make joint decisions. Thus, considering the entirety of the magistrate's decision, we cannot say that Father was awarded custody of the children because Mother took the children to appointments without Father's consent.

{¶28} Moreover, while the trial court adopted the magistrate's decision, in the entry addressing the objections, the trial court found it was in the children's best interests to terminate

the shared parenting plan based upon several factors including: the children's relationship with their parents, the fact that they experienced instability while in Mother's care, the fact that the parents were unable to communicate regarding the children's care, that the children were well-adjusted to living with Father, that Mother was in need of counseling to address her behavior issues, that Father was more likely to honor court approved parenting time, and that the GAL recommended that the children reside with Father. The trial court did not mention the fact that Mother took the children to medical or psychological appointments without Father's consent as a basis for terminating the shared parenting plan and naming Father the residential parent.

{¶29} With respect to Mother's contention that she was found in violation of court orders and sanctions were issued against her based upon her taking the children to appointments without Father's consent, we likewise cannot conclude that the trial court based its decision to issue sanctions on that behavior.

{¶30} In detailing the conduct that the magistrate found frivolous, the magistrate did mention that Mother took the children to doctors and a psychologist without Father's consent. However, read in context of the entire decision, it appears that the magistrate was expressing that such behavior prolonged the litigation and also perhaps allowed Mother to manipulate the children's views and statements. The sentences after the mention of the doctors' visits state that "Mother then requested an in camera interview with the minor children immediately following her parenting time. Mother repeatedly, aggressively, and persistently, instructed the minor children in their actions and statements and further directed the minor children as to their in camera interview with [the] Magistrate[.]" Additionally, the magistrate pointed out that Mother had requested four continuances in the case, requested, then withdrew, and then resubmitted a

request for a custody evaluation, had failed to timely pay certain fees, and admitted to violating a discovery order.

{¶31} Additionally, the magistrate found Mother in contempt for violating a June 2015 order which limited Mother's contact with the children and for violating the court's order which restrained the parties from discussing court matters and the recordings with the children. Thus, we are unpersuaded that the magistrate's reference to Mother failing to follow court orders refers primarily or solely to Mother's act of taking the children to medical appointments without Father's consent when the magistrate found Mother had violated multiple court orders.

{¶32} As Mother has not argued that the decision terminating the shared parenting plan and naming Father the residential parent was not in the children's best interest or was otherwise unsupported by the record, and has not otherwise challenged the amount or legality of the sanctions imposed, those issues are not before us in this appeal. Based on Mother's limited argument, her second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT'S PURPORTED GAG ORDER AND LIMITATIONS ON THE TESTIMONY OF THE CHILDREN WAS A VIOLATION FO MOTHER'S DUE PROCESS RIGHTS, AS IT INHIBITED HER ABILITY TO CROSS EXAMINE EVIDENCE USED AGAINST HER.

{¶33} Mother asserts in her third assignment of error that the trial court erred in imposing a gag order that prohibited anyone from discussing the audio recordings with the children because said order was never journalized. Additionally, Mother argues that the order interfered with her children's attorney-client relationship with their attorney. Finally, Mother challenges the limitations the magistrate imposed on questioning S.R. and H.R. at trial.

**{¶34}** The gag order Mother references was ordered at the end of the February 21, 2014 hearing after the magistrate discovered the children did not yet know of the audio recordings of their conversations with Mother and Mother's husband. The magistrate then stated:

> The Court's going to issue a gag order to everyone present including the counsel for the children not to discuss the existence of audio recordings or that the children have been recorded by any electronic means * * * and that the Court has listened to some of the audio recordings. Any infraction of that would be a finding of direct contempt of court.

> The Court is also going to caution the parties again that if the Court learns of any discussion with the children about any of these court proceedings or further questions of the children about what they told the Court or any information given to the children about what happened in court, or what will be happening in the future about court, will be a finding of direct contempt[.]

**{¶35}** The gag order was not reduced to writing, but was later mentioned in a subsequent order. In March 2015, Father filed a motion for contempt against Mother alleging she had violated the February 21, 2014 gag order as she continued to discuss court matters with the children and as well as the audio recordings. Additionally, Father filed a motion to restrain the children's contact with Mother in light of her efforts at alienating Father. Mother did not respond to the motions. In May 2015, Mother filed a motion for contempt alleging that Father denied Mother visitation. A hearing was held May 21, 2015. While the motion was not immediately ruled upon, it was addressed in the magistrate's decision. In the magistrate's decision, the magistrate found Mother in contempt of the gag order.

**{¶36}** Mother has not argued that she did not violate the gag order; instead, she has only argued that it was not a proper order because it was not journalized. Mother has pointed to no case law holding that the failure of a party to follow a verbal order of the court cannot lead to a finding of contempt. *See* App.R. 16(A)(7). In fact, other courts have held the opposite. *See, e.g., Champaign Cty. Court of Common Pleas v. Fransler*, 2d Dist. Champaign No. 2015-CA-4,

2016-Ohio-228, ¶ 17 ("Indeed even disobedience of a verbal order of a court * * * is sufficient to support a criminal contempt."); *see also Disciplinary Counsel v. Robinson*, 126 Ohio St.3d 371, 2010-Ohio-3829, ¶ 47 (discussing a case in which respondent's conduct of deliberately disobeying a verbal order of the court and lying about it was determined to be a violation of various professional conduct rules). Given the foregoing, we see no merit to Mother's argument.

**{¶37}** Additionally, Mother maintains that the gag order interfered with her children's attorney-client relationship with their attorney. However, Mother has not explained how this affected her own rights. "An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." *In re Smith*, 77 Ohio App.3d 1, 13 (6th Dist.1991), citing *State v. Ward*, 9th Dist. Summit No. 13462, 1988 Ohio App. LEXIS 3783, * 7 (Sept. 21, 1988); *see also In re M.Z.,* 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194, ¶ 34; *In re Goggins*, 9th Dist. Summit No. 18820, 1998 Ohio App. LEXIS 3527, *11 (July 29, 1998). As Mother has not explained how she was prejudiced, she lacks standing to raise this issue, and her argument is overruled on that basis. *In re Goggins* at *11.

**{¶38}** Mother next asserts that the manner in which the magistrate limited the children's testimony violated Mother's due process rights. We note that Mother cites no law in support of her argument. *See* App.R. 16(A)(7).

**{¶39}** The older children, S.R. and H.R. were subpoenaed by Mother to testify at the September 30, 2015 trial date. The children's attorney and the GAL filed motions to quash the subpoenas. The GAL indicated that the children's counselors and the GAL felt that it was not in the children's best interest to testify. Mother objected to the motion to quash arguing that the children's statements were not being accurately portrayed by the GAL and custody evaluators. The morning of the hearing, September 30, 2015, the magistrate issued an order limiting the

testimony of the children and the manner in which the testimony would take place. The magistrate ordered that the questioning was limited to questions that directly related to the purported factual inaccuracies in the reports or testimony of the GAL and custody evaluators. Mother was to submit a written list of the purported factual inaccuracies and to state on the record what each was prior to questioning the children.

{¶40} Despite Mother's contention to the contrary, Mother was allowed to finish her examination of Father prior to questioning the children. While Mother's request to continue the questioning of the children to a later date was denied, during the proceedings in the trial court, Mother failed to proffer the testimony she alleges she was prohibited from eliciting. *See* Evid.R. 103(A)(2). Mother was able to question H.R.; however there was not time to question S.R. that day. Mother acknowledged in a subsequent motion that the questioning of S.R. was continued to a future hearing date. At the end of the September 30, 2015 hearing, the magistrate asked H.R. whether, if there were additional questions, H.R. would be willing to answer them in chambers at a later time, which H.R. agreed to do. Mother has pointed to nothing in the record which suggests that Mother requested that the children be recalled to answer additional questions and that request was denied.

{¶41} Mother filed a motion to set aside the September 30, 2015 magistrate's order and also requested to stay the children's testimony pending the ruling on her motion and to proffer the children's testimony. In November 2015, the parties entered into an agreed entry agreeing that the testimony/proffer of the children would be stayed until a ruling by the trial court on the various motions. They also agreed that the court would schedule a further trial date for the testimony and/or proffer of the children's testimony. Ultimately, the trial court denied Mother's motion to set aside the magistrate's September 30, 2015 order but noted in its entry that it was a

temporary order and the parties would have time to negotiate the issues prior to the final hearing. The magistrate also granted Mother's motion to proffer. Mother points to nothing in the record indicating that she attempted to recall S.R. or H.R. subject to the limits of the September 30, 2015 order and was denied the same or that she sought to proffer the children's testimony and was denied the same. Under these circumstances, and given Mother's failure to cite to any law on the issue, Mother has failed to demonstrate that her due process rights were violated.

{¶42} Mother's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE DECISION OF THE TRIAL COURT IN FINDING MOTHER VIOLATED THE COURT'S JUNE 23, 2015 ORDER BY ATTENDING SPORTING EVENTS OF THE CHILDREN AND "LIKING" THE CHILDREN'S SOCIAL MEDIA POSTS WAS AN ERROR OF LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶43} Mother argues in her fourth assignment of error that the trial court erred in concluding that Mother violated the June 23, 2015 order limiting Mother's contact with the children and that such decision is against the manifest weight of the evidence. Specifically, Mother argues that her behavior did not amount to a communication.

{¶44} "When an appellant challenges the weight of the evidence in a civil case, this Court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Lubanovich v. McGlocklin*, 9th Dist. Medina No. 14CA0081-M, 2015-Ohio-4618, ¶ 5, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. [T]he weight to be given the evidence and the credibility of the

witnesses are primarily for the trier of the facts." (Internal quotations and citations omitted.) *T.S. v. R.S.*, 9th Dist. Summit No. 27955, 2017-Ohio-281, ¶ 4.

{¶45} In March 2015, Father filed a motion to restrain the children's contact with Mother arguing that her behavior evidenced an effort to alienate Father. Mother did not respond to the motions. A hearing was held on May 21, 2015. On June 23, 2015, the magistrate issued an entry limiting Mother to supervised visitation with her children, which was adopted by the trial court. The order also limited other communication:

> [Mother's] texting and phone communication as well as any other forms of communication shall occur only twice a week, on Tuesdays and Thursdays, with only <u>one</u> text provided by [Mother] to each child on each of those days, and <u>one</u> verbal communication to all children collectively (i.e. [Mother] will need to call [Father's] home phone or cell and be put on speakerphone etc. so that all children can participate at once) on each of those days. [Father] is authorized as he may deem appropriate to monitor the phone communication that occurs. The verbal communication via phone/cell phone shall be no longer than 15 minutes in length. The current spouse of [Mother] shall not participate in the phone call, text messages, or any other form of communication that occur with the children.
>
> [] Further, [Mother] shall not encourage or request that the children contact her at other times via text/phone or other forms of communication for any purpose(s).
>
> [] [Mother is not authorized to respond to the children's text messages, or phone calls that the children may place to her except as provided by this order.

(Emphasis sic.)

{¶46} In November 2015, Father moved to hold Mother in contempt for violating the June 2015 order. The matter was submitted to the court on the filed motions and affidavits. In Mother's affidavit, she acknowledged that she attended two of S.R.'s sporting events after the order was issued and that at one of them she and the children hugged but she told them she was not allowed to have contact with them. The children then indicated that they understood and did not try to have further contact with Mother. Mother also admitted to following S.R. and H.R. on Instagram and stated that they also follow her. Mother averred that she has "liked" photos her

children have posted and also has, on one occasion, commented on one of H.R.'s photos. As Mother only joined Instagram in September 2015, any actions by Mother on Instagram would have occurred after the order.

{¶47} The magistrate found Mother in contempt for violating the June 23, 2015 order stating that "Mother's contact by social media and attendance at sporting events [were] not acceptable and place[d] the children in an untenable position while emboldening Mother to continue her contemptuous behavior. Mother admit[ted] in her affidavit that she ha[d] contact with the minor children by social media and attended sporting events where she had contact with the minor children."

{¶48} Mother argues that liking her children's posts and attending sporting events were not communications. However, Mother did more than just like her children's posts and attend sporting events. Mother also commented on a post and hugged her children and briefly spoke to them at a sporting event. The dictionary defines communication, inter alia, as "an act or instance of transmitting[,] * * * a process by which information is exchanged between individuals through a common system of symbols, signs or behavior[,]" and the "exchange of information[.]" *Merriam-Webster's Collegiate Dictionary* 251 (11th Ed.2004). Thus, even if this Court were to conclude that the trial court abused its discretion in finding that Mother's social media interactions violated the court's order, the trial court could have reasonably concluded that Mother's behavior of engaging with her children at a sporting event by hugging them and talking to them did violate the order. *See SandiCare, LLC v. Wilson*, 9th Dist. Summit No. 28306, 2017-Ohio-7596, ¶ 8 (noting that an appellate court will not reverse a trial court's decision in a contempt proceeding absent the appellant demonstrating that the trial court abused its discretion).

{¶49} Given Mother's argument, her fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE DECISION OF THE TRIAL COURT IN ENACTING A CHILD SUPPORT ORDER THAT FAILED TO GIVE MOTHER CREDIT FOR THE MARGINAL COSTS OF HEALTH INSURANCE SHE WAS ORDERED TO PROVIDE UNDER A PRIOR ORDER OF THE COURT WAS AN ERROR OF LAW.

{¶50} Mother argues in her fifth assignment of error that the trial court erred in failing to give Mother credit for her marginal costs of health insurance in its child support calculations. We agree in part.

{¶51} "Generally, [w]e review matters involving child support under the abuse-of[-]discretion standard." *King v. King*, 9th Dist. Medina Nos. 11CA0006-M, 11CA0023-M, 11CA0069-M, 2012-Ohio-5219, ¶ 30. (Internal quotations and citations omitted.) This Court has previously held that it is an "error to exclude health insurance payments for children from the child support computation worksheet." *Wachter v. Wachter*, 9th Dist. Summit No. 23170, 2006-Ohio-6970, ¶ 8. However, the trial court necessarily needs evidence of the amounts of those payments in order to properly complete the worksheet.

{¶52} On appeal, Mother does not dispute that she failed to submit evidence of her health insurance costs at the hearings. Father notes that Mother, on more than one occasion, notified the court that she intended to present evidence of those costs; however she did not do so. Nonetheless, Mother argues that, because the February 2013 provisional child support order gave Mother credit for her health insurance costs of $2,040 and she was ordered to continue providing health insurance for the children, then that amount must be credited to her from the date of the order through the date of the magistrate's decision.

{¶53} We conclude that the trial court did err in adopting the magistrate's child support calculations for the period of December 3, 2012 through December 31, 2014. While Mother did

not supply the trial court with information about her health insurance costs for that period, Father did. Father submitted exhibit FF, which the magistrate admitted and noted was a "[s]ummary detailing child support calculation by year." That summary listed Mother's medical and vision costs as $2,040 for the years 2011, 2012, 2013, and 2014. Given that Father apparently agreed that those were Mother's health insurance costs for those years, it would seem unreasonable for the magistrate and trial court to not consider them in computing child support for the years 2012-2014.[2]

**{¶54}** The summary, however, has no information about Mother's 2015 health insurance costs. Accordingly, to the extent the trial court declined to include Mother's health insurance costs in the worksheet for the child support order effective January 1, 2015, we cannot say Mother has demonstrated the trial court abused its discretion. Mother's counsel informed the court that she would be providing testimony evidencing Mother's marginal health insurance costs and then failed to do, despite numerous opportunities to do so and a lengthy period of time in which to do so; the hearing at which Mother's counsel informed the court that she would be providing evidence of the costs took place in September 2015. The last hearing did not take place until February 2016. *See Marron v. Marron*, 12th Dist. Warren Nos. CA2013-11-109, CA2013-11-113, 2014-Ohio-2121, ¶ 27-31 (following this Court's precedent in *Wachter*, but concluding that there was no abuse of discretion in the court failing to allow husband to reopen his case to present health insurance costs when husband had a full and fair opportunity to present the evidence but failed to do so). To the extent Mother asserts that the trial court should have assumed that her 2015 health insurance costs were the same as what they were at the time of the

---

[2] Mother was not ordered to pay child support in 2011.

2013 order, we reject the argument given Mother's failure to point to any authority that would require the trial court to do so. *See* App.R. 16(A)(7).

**{¶55}** Mother's fifth assignment of error is sustained in part, and overruled in part. The trial court shall recalculate child support for the years 2012-2014 including Mother's health insurance costs of $2,040 in the worksheets for each of those years.

### III.

**{¶56}** Mother's fifth assignment of error is sustained in part, and overruled in part. Mother's remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and this matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX, Attorney at Law, for Appellant.

MARY E. RANDAZZO, Attorney at Law, for Appellee.

CHANDRA MUSTER, Attorney at Law, for Children.

JAMES PHILLIPS, Guardian ad Litem.