[Cite as *Kelly v. Kelly*, 2019-Ohio-4723.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

RODNEY KELLY

    Appellee

    v.

ANGELA KELLY

    Appellant

C.A. No.     18AP0048

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2014 DR-A 000330

DECISION AND JOURNAL ENTRY

Dated: November 18, 2019

CARR, Judge.

{¶1} Defendant-Appellant Angela Kelly appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} Ms. Kelly and Plaintiff-Appellee Rodney Kelly married in 1989 and two children were born of the marriage. At the time of this appeal, both children were no longer minors. In 2014, Mr. Kelly filed a complaint for divorce and Ms. Kelly thereafter filed an answer and counterclaim also seeking a divorce. In 2016, a judgment entry of divorce was filed. Relevant to this appeal, the judgment provided that "[s]pousal support shall be paid to [Ms. Kelly] in the amount of $1,200 per month for ninety-six (96) months. * * * Spousal support shall terminate on August 31, 2024 unless sooner terminated upon the death of either party, or the re-marriage of [Ms. Kelly]. The Court shall retain jurisdiction over the issue of spousal support in both amount and length of time." In addition, the parties were ordered to split the credit card debt from a

Capital One card with Mr. Kelly being ordered to pay $13,261.51 and Ms. Kelly being ordered to pay $4,686.50.

{¶3} In November 2017, Mr. Kelly filed a motion to modify or terminate his spousal support obligation based upon his deteriorating health and earnings, and Ms. Kelly's cohabitation with another man. In addition, the motion sought a modification of Mr. Kelly's child support obligation. Subsequently, Ms. Kelly filed motions for contempt for Mr. Kelly's alleged failure to pay child and spousal support as outlined in the decree and for his alleged failure to pay his portion of the then-minor child's medical expenses. In addition, she filed a motion seeking to offset the amount she owed on the Capital One credit card against Mr. Kelly's spousal support arrearage.

{¶4} A hearing was held before a magistrate in April 2018. It was undisputed that Mr. Kelly ceased paying spousal support payments in September 2017. Mr. Kelly presented evidence, including his testimony and a portion of a letter from the Social Security Administration, that subsequent to the divorce he became disabled, at which time he also stopped working. Mr. Kelly testified that he was diagnosed with spinal stenosis which caused him pain and required him to undergo multiple surgeries. For the twelve weeks following Mr. Kelly's last day of work in May 2017, he was paid through his employer's short-term disability. Following that he was paid through a long-term disability insurance plan. While he was receiving the long-term disability payments he applied for disability with the Social Security Administration in November 2017. Mr. Kelly was notified in February 2018 by the Social Security Administration that he was found to be disabled as of May 5, 2017, and that he was entitled to receive monthly benefits beginning in November 2017. His monthly benefit, beginning in December 2017, was $2,489.90, or approximately $30,000 per year. This amount is close to the amount Ms. Kelly

testified to earning: approximately $27,000. The child support worksheet accompanying the divorce decree reflected that Mr. Kelly's income at the time of the divorce was approximately $71,000. In 2017, Mr. Kelly received approximately $51,000 in wages from his employer, which included disability payments.

{¶5} In addition, testimony was presented from Mr. Kelly and Mr. Kelly's father's attorney concerning Mr. Kelly's expected inheritance from his father's estate. While Mr. Kelly was the sole beneficiary of the will, at the time of the hearing, the estate remained open and Mr. Kelly had only acquired possession of an old car. The remaining assets were five parcels of real estate. The attorney appeared uncertain as to when the estate would close. The attorney noted that there were several debts of the estate, including credit card bills, back taxes, and attorney fees that needed to be addressed, as well as an oil and gas well that needed to be plugged and a new survey that needed to be conducted on the properties. At the time of the hearing, there was one house on one of the properties that was being rented. Mr. Kelly received the rents from that property, but only because he was the personal representative of the estate. Thus, the rental income was income of the estate, not of Mr. Kelly personally.

{¶6} The magistrate issued a decision finding that Mr. Kelly was involuntarily unemployed as of May 5, 2017. The magistrate further concluded that that change constituted a substantial change of circumstances that was not contemplated by the court or the parties at the time of the divorce. The magistrate concluded that Mr. Kelly's income was $44,268. In so finding, the magistrate included as income $1,200 a month in rental income from two properties on the parcels that Mr. Kelly was to inherit. Due to Mr. Kelly's change in circumstances, the magistrate determined that the spousal support award should be reduced to $700.00 per month. The magistrate's decision indicated that the court would continue to maintain jurisdiction over

the issue of spousal support in both amount and length of time. In addition, the magistrate found Mr. Kelly in contempt for failing to pay spousal support as ordered. To account for the arrearage, the spousal support obligation was extended until 2025. That same day, the trial court issued a judgment entry mirroring the magistrate's findings.

{¶7} Both parties filed objections to the magistrate's decision. Thereafter, the trial court issued an entry ruling on the objections. The trial court concluded that "it is no longer reasonable or equitable to require [Mr. Kelly] to pay spousal support. This is because of his total disability. Someday [he] will receive some real estate from his father's estate. But it would be highly speculative to consider this as a potential source of funds with which to pay spousal support." The trial court then expressly terminated Mr. Kelly's spousal support obligation. As to the contempt finding for Mr. Kelly's failure to pay spousal support, Mr. Kelly was ordered to pay the $7,300 arrearage in increments of $200 per month. Ms. Kelly's objection concerning her request to offset the credit card debt against the spousal support arrearage was overruled.

{¶8} Ms. Kelly has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING RODNEY KELLY'S MOTION TO TERMINATE SPOUSAL SUPPORT AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW. SPECIFICALLY, THERE IS NO SUBSTANTIAL CHANGE BASED UPON RODNEY'S FAILURE TO PROVE AN INVOLUNTARY DECREASE IN INCOME AND RODNEY'S FULL INCOME AND ASSETS WERE NOT CONSIDERED BY THE TRIAL COURT.

{¶9} Ms. Kelly argues in her first assignment of error that the trial court abused its discretion in terminating Mr. Kelly's spousal support obligation. Specifically, she maintains that Mr. Kelly failed to establish an involuntary decrease in his income and the trial court abused its

discretion in failing to consider Mr. Kelly's expected inheritance as part of his income or the potential for others to help with his expenses.

{¶10} "Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." (Internal quotations and citations omitted.) *Condon v. Rockich,* 9th Dist. Summit No. 28479, 2018-Ohio-71, ¶ 10. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Condon* at ¶ 10. "This Court reviews the domestic relations court's decision regarding the modification of spousal support for an abuse of discretion." *Wuscher v. Wuscher*, 9th Dist. Summit No. 26924, 2014-Ohio-377, ¶ 9. The Supreme Court of Ohio has concluded that "the difference between a modification and a termination of alimony was a distinction without a difference. Modification and termination of an alimony award are simply different points or degrees on the same continuum." (Internal quotations and citation omitted.) *Kimble v. Kimble*, 97 Ohio St.3d 424, 2002-Ohio-6667, ¶ 7. In order for a trial court to have jurisdiction to modify an award of spousal support following a divorce, "there must be a reservation of jurisdiction to modify the award in the divorce decree." *Daubenmire v. Daubenmire*, 9th Dist. Medina No. 18CA0045-M, 2019-Ohio-2372, ¶ 9. The moving party must also demonstrate (1) a substantial change in circumstances that renders the award no longer reasonable and appropriate; and (2) that neither the trial court nor the parties took into account the change "as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was

foreseeable." R.C. 3105.18(F)(1).[1]    In addition, R.C. 3105.18(F)(1) is subject to R.C. 3105.18(F)(2), which states that "[i]n determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties.  Absent an agreement of the parties, the court shall not modify the continuing jurisdiction of the court as contained in the original decree."

{¶11}  There is no dispute that the divorce decree contains a provision retaining jurisdiction.  Specifically, it states: "Spousal support shall be paid to [Ms. Kelly] in the amount of $1,200 per month for ninety-six (96) months.  * * * Spousal support shall terminate on August 31, 2024 unless sooner terminated upon the death of either party, or the re-marriage of [Ms. Kelly].  The Court shall retain jurisdiction over the issue of spousal support in both amount and length of time."  In fact, Ms. Kelly concedes the same in her brief.  Moreover, neither side has argued that the language of the decree prevented the trial court from terminating spousal support based upon Mr. Kelly's disability and change in financial circumstances.[2]  *See* App.R. 16(A)(7).

### Involuntary Unemployment

{¶12}  First, Ms. Kelly asserts that the evidence Mr. Kelly presented was insufficient to establish he was involuntarily unemployed.  Ms. Kelly points out that Mr. Kelly did not present any medical evidence about his condition.  However, in cases involving the initial determination

---

[1] Language in the uncodified portion of  2011 Am.H.B. No. 461, Section 4 indicates an intent by the General Assembly to abrogate *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222.  *See Bixler v. Bixler*, 12th Dist. Clermont No. CA2016-12-081, 2017-Ohio-7022, ¶ 23.  Accordingly, this Court will rely on the language in the statute in analyzing whether modification of the spousal support award was authorized.

[2] There is an argument that the law set forth in *Fuller v. Fuller*, 9th Dist. Summit No. 28891, 2018-Ohio-5313, ¶ 9-17, might support the conclusion that the trial court could not terminate spousal support under these circumstances.  *See id.* at ¶ 16.  However, we conclude that the language in the decree in this case is distinguishable from the language in the decree in *Fuller*, such that we determine *Fuller* is distinguishable from the instant matter.  *See id.* at ¶ 3 (setting forth the terms of the decree).

of spousal support, this Court has stated that "[i]n a divorce action, a spouse does not have to present expert testimony that h[is] medical problems prevent h[im] from earning a living." *Madcharo v. Madcharo*, 9th Dist. Lorain No. 14CA010547, 2015-Ohio-2191, ¶ 11. "'[T]he crucial focus is whether the party asserting a disability presents evidence explaining how h[is] disability limits his or herself.'" *Id.*, quoting *Albrecht v. Albrecht*, 11th Dist. Trumbull No. 2013-T-0124, 2014-Ohio-5464, ¶ 22. In addition, Ms. Kelly argues that Mr. Kelly failed to demonstrate his disability was permanent, he could not return to work doing something else, or whether he could return to work and still be considered disabled.

{¶13} Here, Mr. Kelly testified that he was diagnosed with spinal stenosis. When asked why he could no longer work, Mr. Kelly testified that he

> h[as] spinal stenosis throughout [his] spine, degenerative disks throughout [his] spine, arthritis, * * * impingements on the right and left side of [his] extremities, which go down the right and left hand arm, constant pain in the neck, they have [him] on 4800 milligrams of gabapentin, off and on Vicodin. [He's] had surgeries on [his] right arm, * * * left arm and [his] wrists to try and eliminate the pain, they've actually cut nerves, [his] left and right now, [his] four fingers are numb, they want [him] to continue to wear the splint and the sling until hopefully [the] nerves will grow back.

{¶14} As discussed above, Mr. Kelly testified that he stopped working on May 5, 2017, and initially began receiving short-term disability from his employer and then began to collect long-term disability through a disability insurance company. In November 2017, Mr. Kelly applied for Social Security Disability. Mr. Kelly submitted a portion of a letter from the Social Security Administration which demonstrated that he was "entitled to disability benefits beginning November 2017" and he "became disabled under [its] rules on May 5, 2017." Further, "[t]o qualify for disability benefits, [Mr. Kelly] [had to] be disabled for five full calendar months in a row." The letter also indicated that, beginning December 2017, Mr. Kelly's monthly benefit

was $2,489.90. Nothing in the letter indicated that the benefits will terminate or that his disability is temporary.

{¶15} Based upon the evidence presented at the hearing, we cannot say that the trial court's conclusion that Mr. Kelly was involuntary unemployed was unsupported by the evidence. *See Albrecht,* 2014-Ohio-5464, at ¶ 24.

**Inheritance**

{¶16} Ms. Kelly additionally argues that the trial court abused its discretion in failing to consider the assets in Mr. Kelly's father's estate in calculating Mr. Kelly's income. However, we cannot conclude that the trial court abused its discretion in not considering those assets. The estate consisted almost entirely of five parcels of real estate. As mentioned above, while Mr. Kelly was the sole beneficiary in the will, Mr. Kelly's father's estate had not yet closed at the time of the hearing and, from the testimony, it appears that there were several issues that needed to be resolved before the estate could be closed. Mr. Kelly's father's attorney pointed out there were several debts of the estate, including credit card bills, back taxes, and attorney fees that needed to be addressed, as well as an oil and gas well that needed to be plugged and a new survey that needed to be conducted on the properties. While, at the time of the hearing, one house on one of the properties was being rented and Mr. Kelly received the rents from that property, he only did so because he was the personal representative of the estate. Thus, the rental income was income of the estate, not of Mr. Kelly personally.

{¶17} Therefore, there was evidence that while Mr. Kelly would undoubtedly inherit something of value when the estate closed, it was unclear when Mr. Kelly would do so, or how much Mr. Kelly would actually inherit after the debts of the estate were satisfied. Accordingly,

we cannot say that Ms. Kelly has demonstrated that the trial court erred in failing to consider the assets of the estate in determining Mr. Kelly's income.

**Additional Income**

{¶18} Finally, Ms. Kelly argues that the trial court failed to consider that Mr. Kelly could obtain additional income or financial assistance from his girlfriend and adult son, who lived with Mr. Kelly. Mr. Kelly testified that he did not charge his girlfriend or son rent or require them to pay Mr. Kelly's bills. In fact, Mr. Kelly claimed to not know how much his girlfriend earned. Nonetheless, his girlfriend helped with chores and sometimes bought groceries, whereas his adult son, who only made $10.00 per hour, helped out when he was able to. The fact that the trial court did not mention these details in its entry does not require the conclusion that the trial court failed to consider them in rendering its decision. The trial court in its original judgment entry noted that it considered the evidence presented. The trial court was also presented with Ms. Kelly's testimony that she lived with an adult male in a house his parents owned. She also testified that she did not know how much this individual earned. While she paid rent, the only utilities she testified to paying were garbage and cable. Further, there was evidence presented that Ms. Kelly is seven years younger than Mr. Kelly and that she had no health problems at the time of the hearing. Moreover, Ms. Kelly's income of approximately $27,000 was fairly close to the amount of money Mr. Kelly would receive each year in disability payments. Whereas, at the time of the divorce, Mr. Kelly earned approximately $71,000 per year.

{¶19} Given the totality of the evidence, we cannot say that Ms. Kelly has demonstrated that the trial court failed to consider certain evidence, or, even if it did fail to do so, she has not

demonstrated that consideration of such evidence would lead to the conclusion that the trial court abused its discretion in terminating Mr. Kelly's spousal support obligation.

{¶20} In light of Ms. Kelly's arguments on appeal, we cannot say that she has demonstrated that the trial court abused its discretion in terminating Mr. Kelly's spousal support obligation.

{¶21} Ms. Kelly's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY DENYING ANGELA KELLY'S REQUEST TO OFFSET RODNEY'S FINANCIAL RESPONSIBILITY FOR THE CAPITAL ONE CREDIT CARD AGAINST THE AMOUNT OWED BY RODNEY FOR SPOUSAL SUPPORT ARREARAGES.

{¶22} Ms. Kelly argues in her second assignment of error that the trial court erred in denying her motion to offset her credit card obligation under the decree against Mr. Kelly's spousal support arrearage.

{¶23} Essentially, Ms. Kelly argues that Mr. Kelly's non-payment of spousal support beginning in September 2017 hindered her ability to pay the credit card obligation in the timeframe required by the trial court. She maintains that denying her motion to offset that liability against Mr. Kelly's spousal support arrearage was inequitable as she will not be able to comply with the trial court order.

{¶24} In November 2017, the trial court ordered that Ms. Kelly must pay Mr. Kelly $4,686.50 for the credit card debt detailed in the decree. Ms. Kelly was to do so over the course of the following year, with one half due in six months. First, given that over a year has passed, it is possible that Ms. Kelly's argument is moot, as it is possible Ms. Kelly has paid the debt. Notably, the last entry on the trial court docket in this matter is dated October 23, 2018, and this Court cannot locate any entries indicating the debt remains unpaid.

{¶25} Irrespective, Ms. Kelly has not demonstrated the trial court abused its discretion in denying her motion. Ms. Kelly does not dispute that she owes the money, nor did she present any evidence that she would be unable to pay the debt, aside from her conclusory testimony that she was unable to do so. Ms. Kelly did not detail any efforts she undertook to secure the necessary funds. For example, Ms. Kelly did not testify that she was unable to obtain a loan for that amount. In addition, while Ms. Kelly maintains that an offset would be the only equitable solution, Ms. Kelly has not explained why moving the trial court to extend the payment deadline would not be a viable alternative.

{¶26} Ms. Kelly points to *Young v. Young*, 9th Dist. Wayne No. 16AP0016, 2017-Ohio-238, in support of her argument that the trial court abused its discretion in denying her motion for an offset. However, we conclude *Young* is distinguishable. In *Young*, the trial court did elect to offset the amount of the credit card debt that the wife owed to the husband against the husband's spousal support obligation. *See id.* at ¶ 18. This Court merely concluded that the trial court did not abuse its discretion in doing so. We did not conclude that it would have been unreasonable for the trial court to deny a motion for an offset. Accordingly, Ms. Kelly has not demonstrated that the trial court abused its discretion in denying her motion for an offset.

{¶27} Ms. Kelly's second assignment of error is overruled.

### III.

{¶28} Ms. Kelly's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ROSANNE K. SHRINER, Attorney at Law, for Appellant.

RENEE J. JACKWOOD, Attorney at Law, for Appellee.