[Cite as *In re S.S.*, 2023-Ohio-245.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: S.S.

C.A. No.    21AP0022

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2016 JUV-G 1106

DECISION AND JOURNAL ENTRY

Dated: January 30, 2023

TEODOSIO, Presiding Judge.

{¶1} Appellant, paternal grandmother S.C. ("PGM"), appeals the May 26, 2021, judgment of the Wayne County Court of Common Pleas, Juvenile Division, disposing of her objections to the magistrate's decision. This Court affirms.

I.

{¶2} As the Supreme Court of Ohio has recognized, "grandparent-grandchild relationships can be of significant value to a child's development." *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 328 (1991). "[I]deally, grandparents will be bound to their grandchildren not only by ties of blood, but by ties of love and affection. Unfortunately, the world we live in is not always an ideal one, and at times, it becomes necessary to determine what legal rights grandparents have to their grandchildren." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 9.

{¶3} In June 2017, the parents of S.S. were found to be unsuitable. H.N., the child's maternal grandmother ("MGM"), was named as her sole legal and physical custodian, while PGM

was granted visitation pursuant to Loc.R. 11(C) of the Court of Common Pleas of Wayne County, Juvenile Division, with the exception of summer visitation being exercised in alternating weeks. In April 2020, PGM filed a motion for contempt, requesting attorney fees and an ex parte order for compensatory visitation. In her attached affidavit, she averred that MGM began refusing PGM's court-ordered visitation with the child in February 2020 due to the Covid-19 pandemic. Some service issues arose, and PGM filed several motions related to discovery. Those motions were denied, but a final hearing on the contempt matter was held before a magistrate in July 2020. In December 2020, the magistrate issued her findings and decision denying the motion for contempt and attorney fees, but awarding PGM some compensatory visitation days. Four days later, the trial court issued an entry adopting the magistrate's decision and entering judgment on the matter. PGM filed timely objections to the magistrate's decision in December 2020 and later supplemented those objections in February 2021. In total, she raised 73 objections, with the 73rd objection consisting of 22 subparts. MGM responded in opposition to the objections. The trial court conducted an independent review of the record and issued a judgment entry on May 26, 2021, disposing of the objections.

{¶4} PGM now appeals from the trial court's May 26, 2021, judgment and raises six assignments of error for our review. We note that MGM responds to these assignments of error collectively in her brief as an overall manifest weight argument. The body of her brief only addresses issues raised in the first two assignments of error, however, while wholly ignoring the remaining four. *See* App.R. 16(A)(7) and (B); Loc.R. 16(A)(7) and (B). *See also Knisley v. Knisley*, 5th Dist. Muskingum No. CA 92-3, 1992 WL 398062, *5 (Dec. 21, 1992) ("Needless to say[,] simply ignoring an adversary's claim does not aid this [C]ourt in its attempt to review all meritorious issues on [an] equitable basis.")

II.

**{¶5}** Initially, this Court is compelled to sua sponte address whether PGM has standing to appeal the trial court's order denying her motion for contempt. *See Ohioans for Concealed Carry, Inc. v. Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, ¶ 42 (recognizing that standing may be raised at any time, including by a reviewing court sua sponte). "Although this [C]ourt is not obligated to address issues not explicitly raised by the parties, it maintains the discretion to do so." *In re J.C.*, 9th Dist. Summit No. 25006, 2010-Ohio-637, ¶ 7, citing *C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298, 301 (1974) (recognizing that "nothing prevents a [c]ourt of [a]ppeals from passing upon an error which was neither briefed nor pointed out by a party").

**{¶6}** While R.C. 2705.09 provides that "[t]he judgment and orders of a court or officer made in cases of contempt may be reviewed on appeal[,]" the Supreme Court of Ohio has explained that "[t]he assumption underlying the statute appears to be that an appeal will be taken only in situations where the court finds a person in contempt." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15 (1988). *Accord Crumpler v. Crumpler*, 9th Dist. Medina No. 21CA0015-M, 2021-Ohio-4622, ¶ 4. Because "contempt is essentially a matter between the court and the person who disobeys a court order or interferes with court processes[,] * * * there is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." *Denovchek* at 17. Thus, in order to challenge the trial court's order on appeal, PGM would need to show prejudice resulting from the court's failure to find MGM in contempt. *See id.*

**{¶7}** PGM sought a finding of contempt based on MGM "failing to allow [PGM] to have visitation time with [S.S.]." R.C. 3109.051(K) provides, in pertinent part:

> If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting * * * visitation rights * * *, ***the court that makes***

*the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt*, and may award reasonable compensatory * * * visitation to the person whose right of * * * visitation was affected by the failure or interference if such * * * visitation is in the best interest of the child.

(Emphasis added.) Pursuant to the plain language of the statute, if the trial court had found MGM in contempt for failing to comply with or interfering with its order granting visitation rights to PGM, the awarding of costs and fees would not have been discretionary; the court would have been required to assess all court costs against MGM and order her to pay PGM's reasonable attorney's fees. *Compare Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 30-32 (determining prejudice was demonstrated by the court's failure to find a party in contempt because the court would have been required by statute to award costs and fees) *with Schiesswohl v. Schiesswohl*, 9th Dist. Summit No. 21629, 2004-Ohio-1615, ¶ 13-15 (determining prejudice was not established by the court's failure to find a party in contempt because the court would have had discretion to tax the party with attorney's fees). Consequently, because PGM would have received reimbursement of her costs and reasonable attorney's fees in pursuing the contempt action, she could demonstrate prejudice resulting from the trial court's failure to find MGM in contempt for denying her visitation. *See Musci* at ¶ 32. We therefore conclude that PGM has standing to challenge the trial court's entry on appeal, and now turn to the merits of her appeal.

Standard of review

{¶8} Generally, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying

matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION, OVER OBJECTIONS, DENYING THE CONTEMPT MOTION.

{¶9} In her first assignment of error, PGM claims that the trial court erred in adopting the magistrate's decision, over objections, by denying her motion to find MGM in contempt of court.

{¶10} "[A]ny person who is granted visitation rights under a visitation order or decree * * * may initiate a contempt action for a failure to comply with, or an interference with, the order or decree." R.C. 2705.031(B)(2). The court "shall have jurisdiction to make a finding of contempt for a failure to comply with, or an interference with, a * * * visitation order or decree and to impose [penalties] in all cases in which the failure or interference is at issue * * *." R.C. 2705.031(E). "Courts also possess the inherent power to punish one who disobeys a court order." *Morehart v. Snider*, 9th Dist. Summit No. 24640, 2009-Ohio-5674, ¶ 33.

{¶11} It is worth noting that "'[f]ew legal concepts have bedeviled courts, judges, lawyers and legal commentators more than contempt of court.'" *Internatl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, fn. 3 (1994), quoting Martineau, *Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt*, 50 U.Cin.L.Rev. 677 (1981). "Contempt of court may be generally defined as disobedience of a court order or conduct that

brings the administration of justice into disrespect or impedes a court's ability to perform its functions." *State v. T.F.*, 9th Dist. Lorain No. 17CA011175, 2019-Ohio-1039, ¶ 7. "Contempt may be classified as either civil or criminal, depending on the character and purpose of the contempt sanctions." *Id.* at ¶ 8. Criminal contempt involves sanctions that are punitive in nature, while civil contempt involves sanctions primarily designed to benefit the complainant through remedial or coercive means. *Id.* Moreover, criminal contempt must be proven beyond a reasonable doubt, while civil contempt requires proof by clear and convincing evidence. *Id.*; *Zemla v. Zemla*, 9th Dist. Wayne No. 11CA0010, 2012-Ohio-2829, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more certain than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶12} To establish civil contempt, the moving party must "'establish a valid court order, knowledge of the order by the defendant, and a violation of the order.'" *Henry v. Henry*, 9th Dist. Summit No. 27696, 2015-Ohio-4350, ¶ 12, quoting *State v. Komadina*, 9th Dist. Lorain No. 03CA008325, 2004-Ohio-4962, ¶ 11. Once the movant proves her prima facie case, the contemnor must present evidence of her inability to comply with the order or any other available defense. *Zemla* at ¶ 11; *Henry* at ¶ 12. While this Court has acknowledged that a trial court has the discretion to consider concern for a child's welfare in contempt matters, we have not gone so far as to recognize that such concerns constitute a defense. *A.G. v. Gain*, 9th Dist. Lorain No. 21CA011736, 2022-Ohio-95, ¶ 17, citing *Morehart* at ¶ 38 (noting that the cases upon which the appellant relied "do not establish a defense to violating a court-ordered visitation schedule; [but]

reinforce the idea that the trial court has discretion in these matters."). The trial court is in the superior position to observe the witnesses and assess their credibility with respect to whether a perceived threat to the child justifies disobeying the visitation order. *Id.* Accordingly, we review a trial court's decision in contempt proceedings for an abuse of discretion. *Hill v. Hill*, 9th Dist. Summit No. 27915, 2016-Ohio-910, ¶ 5.

{¶13} In her merit brief, PGM explains the law of contempt, cites to decisions from this district as well as the Eleventh District (wherein findings of contempt were upheld on appeal), lists the dates she was personally denied visitation with S.S., and notes her disagreement with several aspects of MGM's testimony (although she offers no citations to the record regarding the disputed testimony, *see* App.R. 16(A)(7)). PGM's brief does not, however, set forth or develop any argument as to how or why the trial court abused its discretion in either adopting the magistrate's decision or in overruling PGM's objections and supplemental objections to the magistrate's decision. *See* App.R. 16(A)(7). "[T]his Court will not 'guess at undeveloped claims on appeal' or construct arguments to support an assignment of error." *State v. Beverly*, 9th Dist. Summit No. 28627, 2019-Ohio-957, ¶ 6, quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31. *See also Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out.")

{¶14} The magistrate held a final hearing on the contempt motion and issued her findings and decision, determining that "[PGM had] not met her burden of clear and convincing evidence" and that "[MGM] clearly was justified in taking [] steps necessary to protect the health and safety of the minor child from illness." Accordingly, the magistrate did not find MGM to be in contempt

and thus denied PGM's motion. The trial court adopted the magistrate's decision and entered judgment on the matter.

{¶15} The court then overruled PGM's objections and supplemental objections to the magistrate's decision. In doing so, the court found a sufficient basis in the record, based on the evidence, for concluding that MGM was justified in taking steps necessary to protect the health and safety of S.S. from illness, as the evidence demonstrated that MGM withheld visitation for fear of violating a "Stay at Home" order and to protect the child and her family. The court further found that PGM did not meet her burden of showing by clear and convincing evidence that MGM was obstructing the administration of justice or acting in bad faith. Instead, the court found MGM's actions to be reasonable, in light of the circumstances at the time and the competing orders for both court-ordered visitation and to "Stay at Home."

{¶16} This Court has consistently held that, if contempt proceedings are invoked solely by the person aggrieved by disobedience of the court's order, a refusal to punish for contempt is largely within the discretion of the trial court. *SandiCare, LLC v. Wilson*, 9th Dist. Summit No. 28306, 2017-Ohio-7596, ¶ 14 (citing cases). Despite the fact that MGM denied PGM some of her court-ordered visitation during the Covid-19 pandemic, the trial court has discretion in determining issues of contempt, and it exercised that discretion in this matter by declining to find MGM in contempt. *See, e.g., State ex rel. DeWine v. Miller*, 194 Ohio App.3d 86, 2011-Ohio-2107, ¶ 12 (4th Dist.) ("This court and others have held that trial courts may decline to hold a party in contempt, notwithstanding uncontroverted evidence that a court order has been violated.").

{¶17} PGM has failed to present or develop any articulated argument showing that the court abused its discretion in adopting the magistrate's decision or in overruling her objections and

supplemental objections to the same. *See* App.R. 16(A)(7). Upon review, we cannot say that the trial court erred or abused its discretion in denying PGM's motion for contempt.

**{¶18}** PGM's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION, OVER OBJECTIONS, TO NOT AWARD ATTORNEY['S] FEES, COSTS AND COMPENSATORY MAKE[-]UP VISITATION.

**{¶19}** In her second assignment of error, PGM argues that the trial court erred in adopting the magistrate's decision, over objections, by not awarding attorney's fees, court costs, and compensatory visitation.

**{¶20}** Ohio courts generally adhere to the "American Rule," which provides that a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation, with exceptions to the rule provided for by statute, contractual language, and punitive damages claims. *M.S. by Slyman v. Toth*, 9th Dist. Medina No. 16CA0038-M, 2017-Ohio-7791, ¶ 11.

**{¶21}** PGM relies on R.C. 3109.051(K) to support her argument that the trial court should have awarded her attorney's fees, court costs, and compensatory visitation. R.C. 3109.051(K) provides, in pertinent part:

> ***If any person is found in contempt of court*** for failing to comply with or interfering with any order or decree granting * * * visitation rights * * *, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt, and may award reasonable compensatory * * * visitation to the person whose right of * * * visitation was affected by the failure or interference if such compensatory * * * visitation is in the best interest of the child. Any compensatory * * * visitation awarded under this division shall be included in an order issued by the court and, to the extent possible, shall be governed by the same terms and conditions as was the * * * visitation that was affected by the failure or interference.

(Emphasis added.) The plain language of this statute makes any assessment of court costs, requirement to pay attorney's fees, and award of compensatory visitation contingent upon a finding of contempt. Because there was no finding of contempt in this matter, and in light of our disposition of PGM's first assignment of error, *see* Discussion, *supra*, PGM's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION, OVER OBJECTIONS, THAT THE OHIO RULES OF CIVIL PROCEDURE'S DISCOVERY RULES DO NOT APPLY TO JUVENILE COURT.

{¶22} In her third assignment of error, PGM argues that the trial court erred in adopting the magistrate's decision, over objections, by finding that the Ohio Rules of Civil Procedure do not apply to juvenile proceedings.

{¶23} Some issues with service and discovery arose after PGM filed her motion for contempt, which compelled her to file several discovery-related motions, all of which were denied. PGM then filed a motion to reconsider, which was also denied. The discovery issues were resolved in a prior order, but the magistrate's decision on the issue of contempt detailed those issues again as "necessary for the issue of attorney fees and to understand the position of [PGM]." The magistrate's decision noted that Juv.R. 24 governs discovery in juvenile court cases and that the discovery sought by PGM did not fall within any of the six categories listed in Juv.R. 24(A)(1)-(6). It further noted that Civ.R. 36 governs requests for admissions and that MGM would be permitted to object to requests made by PGM under the rule, which she did. It further stated that: "the court is not persuaded that civil rules of discovery apply to criminal[1] contempt"; "[t]his

---

[1] We note that both the magistrate and trial court referred to the contempt in this matter as "criminal," despite reviewing it under the "clear and convincing" standard reserved for civil

contempt action is not determined on the discovery proposed by [PGM]"; "[t]his action, which is a contempt, is deserving of an evidentiary hearing"; and "[t]he discovery responses[] submitted by [MGM] are legally acceptable and comply with the rules of civil and juvenile procedure." The magistrate's decision was later adopted by the trial court.

{¶24} In her supplemental objections to the magistrate's decision, PGM disagreed that Juv.R. 24 governs discovery in juvenile court cases, and instead asserted that, pursuant to both Juv.R. 1 and Civ.R. 1, the civil rules of procedure and the discovery provisions within those rules apply to parentage cases.

{¶25} In overruling PGM's objections, the trial court found that while PGM disagreed with the magistrate's conclusion that requests for admissions are a discovery procedure set forth under the rules of civil procedure (not the rules of juvenile procedure) and are therefore inapplicable, PGM "fail[ed] to provide any legal basis for her conclusion that the Rules of Civil Procedure apply in juvenile cases and it is not the role of this [c]ourt to make [PGM's] case for her." The court further found that proceedings in the juvenile division are "special statutory proceedings" generally governed by the rules of juvenile procedure, and Civ.R. 1(C)(8) provides that the rules of civil procedure do not apply to special statutory proceedings to the extent that they would by their nature be clearly inapplicable. Moreover, the court found that the rules of civil procedure are inapplicable to criminal contempt actions.

{¶26} On appeal, PGM argues that the trial court erred in finding that the rules of civil procedure do not apply to juvenile proceedings. Specifically, PGM states that she is "disputing the trial court's conclusion that the discovery provisions of the Ohio Rules of Civil Procedure

---

contempt. *See Zemla*, 2012-Ohio-2829, at ¶ 11. Our review of the record reveals that this issue involved civil contempt, not criminal, but that any mistaken reference to the matter as criminal contempt resulted in harmless error.

apply to parentage cases and post-decree contempt matters in such cases."[2]  She relies on Juv.R. 1(C)(4) to argue that the juvenile rules do not apply to procedure "[i]n proceedings to determine parent-child relationships."  She also challenges the actions of the magistrate in "remain[ing] focused on the service issue and whether [MGM] had enough time to answer the discovery requests * * *[,]" which "seemed to set the tone for the hearing that [PGM's] attorney had done something terribly wrong in seeking to compel discovery * * *" and "appeared to taint the magistrate's perception of the credibility of the witnesses, subsequent findings in discovery disputes, and evidentiary rulings."

{¶27}  We first note that, to the extent that PGM challenges the magistrate's actions, we cannot address this type of argument on appeal.  As this Court has previously stated, "'[a]ny claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision.'"  *Wallace v. Wallace*, 9th Dist. Summit No. 25719, 2011-Ohio-4487, ¶ 14, quoting *Knouff v. Walsh-Stewart*, 9th Dist. Wayne No. 09CA0075, 2010-Ohio-4063, ¶ 6, quoting *Mealey v. Mealey*, 9th Dist. Wayne No. 95CA0093, 1996 WL 233491, *2 (May 8, 1996).

{¶28}  "It is well established that proceedings in juvenile court are civil in nature."  *In re T.A.F.*, 9th Dist. Medina No. 09CA0046-M, 2010-Ohio-3000, ¶ 22, citing *In re Agler*, 19 Ohio St.2d 70, 74 (1969).  The Supreme Court of Ohio has stated that "[t]he Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable * * *."  *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 11, citing Former Civ.R. 1(C)(7) and *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360 (1994).  *See also In re R.G.*, 9th Dist. Wayne No.

---

[2] We will presume that this sentence contains a typographical error, as it does not appear to align with the bulk of this assignment of error and, in fact, runs contrary to PGM's claims here.

20AP0012, 2021-Ohio-93, ¶ 17 ("Civ.R. 1 and Juv.R. 45 provide for the application of the Ohio Rules of Civil Procedure in juvenile proceedings unless they are clearly inapplicable").

{¶29} Juv.R. 1(A) provides that the Rules of Juvenile Procedure "prescribe the procedure to be followed in all juvenile courts of this state in all proceedings coming within the jurisdiction of such courts, with the exceptions stated in subdivision (C)." PGM therefore argues that this case involves a "parentage" proceeding and directs us to Juv.R. 1(C), which states that the juvenile rules:

> ***shall not apply*** to procedure (1) Upon appeal to review any judgment, order, or ruling; (2) Upon the trial of criminal actions; (3) Upon the trial of actions for divorce, annulment, legal separation, and related proceedings; (4) ***In proceedings to determine parent-child relationships***, provided, however that appointment of counsel shall be in accordance with Rule 4(A) of the Rules of Juvenile Procedure; (5) In the commitment of the mentally ill and mentally retarded; (6) In proceedings under section 2151.85 of the Revised Code to the extent that there is a conflict between these rules and section 2151.85 of the Revised Code.

(Emphasis added.) A "parent and child relationship" is "the legal relationship that exists between a child and the child's natural or adoptive parents and upon which [R.C. 3111.01 to 3111.85] and any other provision of the Revised Code confer or impose rights, privileges, duties, and obligations." R.C. 3111.01(A). It "includes the mother and child relationship and the father and child relationship." *Id.*

{¶30} PGM has not explained how this matter concerned "proceedings to determine a parent-child relationship" under Juv.R. 1(C)(4). The trial court here was determining a matter of contempt between two grandmothers, not a matter of parentage, so the exception set forth in Juv.R. 1(C)(4) does not apply. *See, e.g., Fortney v. Hines*, 5th Dist. Tuscarawas No. 90AP020018, 1990 WL 173358, *2 (Oct. 31, 1990) ("Once paternity is determined[,] the exception contained in Juv.R. 1(C)(4) no longer applies."); *State ex rel. Kanaga v. Lawson*, 11th Dist. Lake No. 2009-L-106, 2010-Ohio-321, ¶ 11 (determining that Juv.R. 1(C)(4) does not apply when the underlying action

was not brought to establish paternity under R.C. Chapter 3111); *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, ¶ 25 (determining that the Juv.R. 1(C)(4) exception for parentage matters is inapplicable in shared custody matters); *State ex rel. Stanley v. Lawson*, 11th Dist. Lake No. 2009-L-100, 2010-Ohio-320, ¶ 12 (acknowledging Juv.R. 1(C)(4), but determining that Juv.R. 40 governs a temporary custody proceeding commenced pursuant to R.C. 2151.23(A)(2) because it does not involve an R.C. Chapter 3111 paternity action).

**{¶31}** PGM also directs us to Civ.R. 1(A), which states that the civil rules "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity, with the exceptions stated in division (C) of this rule." According to Civ.R. 1(C) though, to the extent that they would by their nature be clearly inapplicable, the civil rules:

> ***shall not apply*** to procedure (1) upon appeal to review any judgment, order or ruling, (2) in the appropriation of property, (3) in forcible entry and detainer, (4) in small claims matters under Chapter 1925 of the Revised Code, (5) in uniform reciprocal support actions, (6) in the commitment of the mentally ill, (7) in adoption proceedings under Chapter 3107 of the Revised Code, (8) ***in all other special statutory proceedings***; provided, that where any statute provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules.

(Emphasis added.)

**{¶32}** "Proceedings in the juvenile division, including parentage actions, are special statutory proceedings pursuant to [Former] Civ.R. 1(C)(7)." *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360 (1994), citing *DeSalvo v. Sukalski*, 8 Ohio App.3d 337 (11th Dist.1983); *Abbott v. Potter*, 78 Ohio App.3d 335 (4th Dist.1992); and 4 Harper, *Anderson's Ohio Civil Practice* 57, Section 147.04(g) (1987) (stating proceedings in the juvenile division are the least amenable to coverage by the Civil Rules). Moreover, we again note that the trial court below was determining a matter of contempt. Both the Supreme Court of Ohio and this Court have recognized that contempt is a collateral issue. *Gatlin v. Harmon*, 9th Dist. Lorain No. 19CA011597, 2021-Ohio-

1852, ¶ 17 (citing cases). Contempt proceedings are considered "special proceeding[s,]" *State v. Timson*, 38 Ohio St.2d 122, 129 (1974), which are "prescribed by special statutes and, in no event, constitute civil actions in the context of [the civil] rules'; thus, such proceedings are exempted from the operation of the Rules of Civil Procedure." *In re Yeauger*, 83 Ohio App.3d 493, 498 (3d Dist.1992), quoting *Courtney v. Courtney*, 16 Ohio App.3d 329, 333 (3d Dist.1984). *See also Wolford v. Wolford*, 184 Ohio App.3d 363, 2009-Ohio-5459 (4th Dist.), ¶ 11 ("[C]ontempt proceedings generally fall outside of the scope of the Ohio Rules of Civil Procedure.").

**{¶33}** As to the claim that the trial court erred in overruling her objections, we agree with the trial court that PGM failed to provide any legal basis for her arguments here. She has not demonstrated how the discovery provisions set forth under the civil rules of procedure apply in contempt matters before the juvenile court.

**{¶34}** PGM's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION, OVER OBJECTIONS, TO ADMIT MEDICAL RECORDS THAT DID NOT MEET A HEARSAY EXCEPTION.

**{¶35}** In her fourth assignment of error, PGM argues that the trial court erred in adopting the magistrate's decision, over objections, by admitting medical records that did not meet a hearsay exception.

**{¶36}** "The decision to admit or to exclude evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Falah v. Falah*, 9th Dist. Medina No. 20CA0039-M, 2021-Ohio-4348, ¶ 7. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and is generally inadmissible unless it falls within a recognized

exception. Evid.R. 801(C) and 802. Evid.R. 803(6) sets forth an exception to the hearsay rule for business records of regularly conducted activity. Evid.R. 901(B)(10) permits such evidence to be authenticated or identified by "[a]ny method of authentication or identification provided by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio or by other rules prescribed by the Supreme Court." R.C. 2317.422(A) provides a procedure for the authentication of medical records.

{¶37} At the final hearing, MGM testified extensively as to S.S.'s surgery and many doctor visits for strep throat and tonsillitis. ENT records were introduced at the end of MGM's direct examination to "verify S.S.'s medical condition that [MGM] testified to here today." No objection to the medical records was raised at that time. The records were later admitted into evidence at the conclusion of the hearing, over objection, as "Exhibit C." In her written objections to the magistrate's decision, PGM made a generalized objection, without any supporting argument, to "the finding admitting A, B, and C." *See* Juv.R. 40(D)(3)(b)(ii) ("An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."). In her supplemental objections, she expanded on this objection only by adding: "Exhibit C consisted of inadmissible hearsay that did not fit within any of the recognized exceptions to hearsay." The trial court, in overruling these objections, recognized that PGM "provide[d] the [c]ourt with no analysis" and found that "the records were not offered for the truth of the statements made therein, but rather to corroborate the testimony that the child routinely need[ed] medical treatment."

{¶38} PGM now claims on appeal that the trial court erred because MGM was not a custodian of the records and was not a qualified witness pursuant to Evid.R. 901(B)(10). She also claims that "[t]he magistrate cited heavily to the records in the medical records (sic) in the

decision" and speculates that this "tends to suggest that such records were much more than corroboration."

{¶39} To the extent that PGM challenges the magistrate's actions in "cit[ing] heavily to the records" or in using them as "much more than corroboration" in her findings and decision, we cannot address those arguments on appeal. As stated above, any claim of trial court error must be based on the trial court's actions, not on the magistrate's findings or proposed decision. *Wallace*, 2011-Ohio-4487, at ¶ 14. The proper inquiry is whether the trial court abused its discretion in overruling PGM's objections to the magistrate's decision. *Michael v. Michael*, 9th Dist. Wayne No. 20AP0010, 2021-Ohio-992, ¶ 21. Accordingly, in reviewing this assignment of error, we must limit our discussion to the errors alleged on the part of the trial court. *Id.*

{¶40} PGM never objected to the medical records when they were introduced during MGM's testimony. When a party fails to contemporaneously object to the testimony and identification of an introduced exhibit, and only later objects, after the close of evidence when the exhibit is being admitted into evidence, she forfeits the matter for review on appeal. *Falah*, 2021-Ohio-4348, at ¶ 12. "Indeed, '[t]he contemporaneous objection rule is fundamental to our jurisprudence.'" *Id.*, quoting *Condon v. Rockich*, 9th Dist. Summit No. 28479, 2018-Ohio-71, ¶ 17, quoting *In re M.B.*, 9th Dist. Lorain Nos. 11CA010060 and 11CA010062, 2012-Ohio-5428, ¶ 11, quoting *Steward v. Norris Bros. Co., Inc.*, 8th Dist. Cuyahoga No. 53540, 1988 WL 32117, *1 (Mar. 17, 1988). "'The rule serves the interest of justice because it allows for the correction of many defects while they are readily curable, as well as it encourages the elimination of delay and the unnecessary use of the appellate process.'" *Id.*, quoting *Condon* at ¶ 17, quoting *In re M.B.* at ¶ 11. Moreover, although PGM argued in her written objections to the magistrate's decision that the records were inadmissible hearsay, "[t]his Court has stated that '[t]he filing of a written

objection to the decision of a magistrate is not a substitute for the obligation to object to a purported error at the time of its occurrence.'" *Id.*, quoting *Condon* at ¶ 17, quoting *In re M.B.* at ¶ 11. In this case, any purported errors with the medical records could have been easily corrected had an objection been timely made. *See id.* "While an appellant who has forfeited such an argument may still argue plain error on appeal, *see* Evid.R. 103(D), this Court will not sua sponte undertake a plain-error analysis if the appellant fails to do so." *Id.* PGM has not argued plain error in this matter.

**{¶41}** PGM's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION, OVER OBJECTIONS, TO CONSIDER DISCUSSIONS OF THE ATTORNEYS AFTER CONCLUSION OF THE HEARING AS EVIDENCE.

**{¶42}** In her fifth assignment of error, PGM argues that the trial court erred in adopting the magistrate's decision, over objections, by considering post-hearing discussions regarding PGM's upcoming vacation as evidence.

**{¶43}** At the end of the final hearing, the magistrate stated that she would take the matter under advisement and issue her findings and decision. She then asked the parties to leave the courtroom so she could speak briefly with the attorneys. MGM's attorney mentioned at this time that PGM was planning to take a vacation to South Carolina. The magistrate then asked MGM (who had apparently not left the courtroom yet) for clarification, and MGM said that PGM planned to take a vacation to her father's house at the end of July. Although the hearing had concluded, these discussions were still being electronically recorded and were later transcribed and included in the hearing transcript. In her findings and decision, the magistrate "noted" that, "at the hearing, [PGM] wished to immediately take a vacation with her family and this child to South Carolina to

visit family * * * while certain travel restrictions are in place." In her written objections and supplemental objections, PGM argued that this finding violated due process and was not based on evidence from the hearing. She admitted that an out-of-state vacation had been planned, but directed the court to her Notice of Availability, in which she stated she was not going on the trip due to the pandemic. The trial court, in overruling her objections, found that this matter was discussed on the record and included in the transcript, and that counsel failed to object. The court further found that even if the finding was made in error, it was irrelevant to the contempt issue and constituted harmless error.

**{¶44}** PGM now argues on appeal that the post-hearing statements regarding the vacation "tainted the hearing[,]" as the magistrate "cited [it] as evidence" and "used [it] to support the false conclusion that [PGM] was disregarding the pandemic." She further argues that the trial court then erred by accepting the information as evidence and by overruling her objections to the magistrate's decision. According to PGM, her attorney could not have reasonably been expected to object to the vacation information, as it was only revealed after the hearing was over, when the magistrate was just talking with the attorneys.

**{¶45}** Based on our review of the transcript, we initially agree with PGM that the hearing had already concluded, as the magistrate stated she would take the matter under advisement and issue a decision. She then asked the parties to leave the courtroom before the vacation plans were first revealed. Noting that PGM wished to immediately take a family vacation to South Carolina while travel restrictions were in place was therefore "clearly contrary to the evidence contained in the record * * *." *Wallace*, 2011-Ohio-4487, at ¶ 14. But, to the extent that PGM challenges the magistrate's actions in citing to or using post-hearing information as evidence in her findings and decision, we cannot address those arguments on appeal. Once more, any claim of trial court error

must be based on the trial court's actions, not on the magistrate's findings or proposed decision. *See id.* The proper inquiry is whether the trial court abused its discretion in overruling PGM's objections to the magistrate's decision, so we must limit our discussion here to the errors alleged on the part of the trial court. *Michael*, 2021-Ohio-992, at ¶ 21.

{¶46} PGM claims that the trial court erred in overruling her objections and in accepting the vacation information as evidence. Her argument seems to suggest that she was prejudiced by this information because it supported a "false conclusion" that she was disregarding the pandemic. Notably, however, the trial court also overruled other objections that referenced related statements that would also seem to support a conclusion that PGM was "disregarding the pandemic." Such statements included, for example:

> "[MGM] and her household were diligent in handwashing; sanitizing; self-isolating; and social distancing [but MGM] did not believe [PGM] took any precautions."

> "The [PGM] and [MGM] households are very different, and [MGM] believed [PGM] was not taking necessary health precautions."

> "[PGM states] she did not test positive for COVID-19 [yet] she also stated she was not tested."

> "[MGM's] household members were wearing masks, using hand sanitizers, and [were] basically restricted to the house * * * [but MGM] did not believe [PGM's] household was taking any precautions[, which] was likely true."

> "[PGM] clearly did not accept that this child was ill and that COVID 19 added to the difficulties."

PGM has not challenged on appeal the trial court's overruling of any objections related to the above statements, which also call into question whether her household was taking appropriate precautionary measures during the Covid-19 pandemic. We therefore fail to see how PGM was prejudiced by the court noting PGM's upcoming, out-of-state vacation during the pandemic. Furthermore, the trial court found that even if the magistrate erred in referencing PGM's upcoming

vacation, it was irrelevant and constituted nothing more than harmless error. PGM even agrees in her merit brief that "[t]he judge was correct when she found it to be irrelevant." Because the record does not show that the trial court relied on this statement, and instead shows that the court expressly found it to be irrelevant and harmless error, we cannot conclude that the trial court erred in overruling this particular objection and in adopting the magistrate's decision. *See, e.g., McCarty v. Johnson*, 10th Dist. Franklin No. 18AP-961, 2020-Ohio-3429, ¶ 19; *Rankin v. Rankin*, 10th Dist. Franklin Nos. 20AP-223 and 20AP-304, 2021-Ohio-1967, ¶ 25.

**{¶47}** PGM's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR SIX

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION, OVER OBJECTIONS, ALLOWING HEARSAY AND CONJECTURE, EXCLUDING VALID CROSS[-]EXAMINATION QUESTIONS, AND TAKING OVERLY BROAD JUDICIAL NOTICE.

**{¶48}** In her sixth assignment of error, PGM argues that the trial court erred in adopting the magistrate's decision, over objections, by allowing hearsay and conjecture, excluding valid cross-examination questions, and taking overly-broad judicial notice.

**{¶49}** PGM first challenges several rulings on objections that were made during the final hearing. She argues that the magistrate erred in: (1) sustaining[3] an objection to a question[4] posed to MGM, which deprived PGM of the opportunity to fully cross-examine MGM; (2) overruling her objection to MGM's testimony that PGM must have entered another's home when getting a dog, which was conjecture; (3) overruling her objection to MGM's testimony about what went on in PGM's house during the pandemic and the children's relationships in the house, which was

---

[3] Contrary to PGM's claim, the record shows that the magistrate did not sustain opposing counsel's objection to this question.

[4] The question at issue is: "And that doesn't mean that you get to make that decision to effectively ship the child away from [PGM] when [PGM] is entitled to those visits, does it?"

hearsay and conjecture; and (4) overruling her objection to MGM testifying from a calendar, which lacked the proper foundation and was hearsay. PGM then characterizes some of the magistrate's comments during the hearing as "problematic" and argues that she was "denied the opportunity to explore" contradictions within MGM's testimony on cross-examination. She speculates that her own evidence was "never taken seriously" by the magistrate and that "conjecture ruled the day * * *." She further cites to Evid.R. 801(C) and claims that impermissible hearsay and conjecture were admitted at the hearing. She also argues that it was improper for MGM to "testify[] from [her] calendar due to the lack of foundation for recollection recorded as set forth in Evid.R. 803(5)."

{¶50} To the extent that PGM challenges the magistrate's actions during the hearing, we cannot address those arguments on appeal. Once again, any claim of trial court error must be based on the trial court's actions, not on the magistrate's findings or proposed decision. *Wallace*, 2011-Ohio-4487, at ¶ 14. The proper inquiry is whether the trial court abused its discretion by overruling PGM's objections to the magistrate's decision. *Michael*, 2021-Ohio-992, at ¶ 21. We will therefore limit our discussion to the errors alleged on the part of the trial court while reviewing this assignment of error. *Id.*

{¶51} As to PGM's claim that the trial court erred in overruling her objections, "[a]rguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, N.A. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. In overruling her objections to the magistrate's decision, the trial court found that PGM cited to no legal authority to explain why these rulings should have been different. The court further found that PGM failed to show how the result of the proceedings would have been different if rulings favorable to her had been made instead. Upon review, we cannot say that the trial court erred in

recognizing that PGM's written objections contained no citations to any legal authority and no explanation as to their prejudicial effect. In her supplemental objections to the magistrate's decision, PGM only made a broad objection to "[t]he following rulings on objections" before listing 22 separate rulings made by the magistrate at the hearing. None of the Rules of Evidence now cited under this assignment of error were cited in the 22-part objection before the trial court. Because the trial court never had the opportunity to address the specific arguments PGM now attempts to assign as error on appeal, we cannot reach the merits of those arguments. *See N.S. v. E.J.*, 9th Dist. Summit No. 29657, 2020-Ohio-4971, ¶ 16, citing *R.S. v. J.W.*, 9th Dist. Summit No. 28970, 2018-Ohio-5316, ¶ 17 (declining to address on appeal arguments appellant failed to raise as objections to the magistrate's decision), citing *J.Y. v. J.Y.*, 9th Dist. Medina No. 17CA0037-M, 2018-Ohio-3522, ¶ 5.

{¶52} PGM also argues that the trial court erred in taking judicial notice of "things happening with the pandemic." Specifically, she challenges the finding that Ohio courts and the legislature "were all issuing orders, proclamations, [and] statutes at an alarming rate[;] and clearly for some citizens there would be angst and confusion." She claims that any "angst and confusion" was not "readily known" and that the court's finding "[lent] credibility to [MGM's] feigned confusion as to what the law permitted her to do."

{¶53} In her objections to the magistrate's decision, PGM claimed that this finding "assumes facts not in evidence," but stated, "[a]ssuming that this fact is admissible and permissible, many courts emphasized in their orders that visits were to continue and such orders were easy to access by simple internet searches." In overruling this objection, the trial court found no merit in PGM's claim that the magistrate impermissibly assumed facts not in evidence. The court found that during the hearing there was "much discussion about the pandemic and the climate

at the time" and that "certain facts relied upon by the magistrate were commonly known." The court also recognized that PGM took the opposite approach in a different objection to the magistrate's decision, wherein she claimed that information within the "Stay at Home" order was "readily available to the public through television and by reading the order." Upon review, we cannot say that the trial court erred or abused its discretion in overruling this objection to the magistrate's decision.

{¶54} PGM's sixth assignment of error is overruled.

### III.

{¶55} PGM's assignments of error are all overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT


CALLAHAN, J.
SUTTON, J.
CONCUR.


APPEARANCES:

DANIEL F. GIGIANO, Attorney at Law, for Appellant.

EDDIE SIPPLEN, Attorney at Law, for Appellee.